Brent Hatch (5715)                                Paul G. Cassell (6078)
Phillip J. Russell (10455)                        S.J. Quinney College of Law
Shaunda McNeill (14468)                           University of Utah
Hatch, James & Dodge, P.C.                        383 University St.
10 West Broadway, Suite 400                       Salt Lake City, UT 84112
Salt Lake City, Utah 84101                        Telephone: (801) 585-5202[1]
Telephone: (801) 363-6363                         Facsimile: (801) 585-2750
Facsimile: (801) 363-6666                         Email: cassellp@law.utah.edu
Email: bhatch@hjdlaw.com

*Attorneys for Paul G. Cassell*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: SUBPOENA TO PAUL G. CASSELL | **PAUL G. CASSELL'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** |
| Underlying case: | |
| VIRGINIA L. GIUFFRE, Plaintiff | |
| v. | Case No. 2:16-mc-00602 |
| GHISLAINE MAXWELL, Defendant | Judge: Dee Benson |
| No. 15-cv-07433-RWS (S.D.N.Y.) | |

Subpoena respondent Paul G. Cassell, a non-party and attorney for the plaintiff in the *Giuffre v. Maxwell* action, hereby moves to quash the subpoena served on him by Ghislaine Maxwell, the defendant in the *Giuffre v. Maxwell* action.

---

[1] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## RELIEF REQUESTED

Cassell requests that this Court quash the subpoena issued by defendant Maxwell to Cassell or, in the alternative, enter a protective order barring Maxwell from enforcing the subpoena.

## BASIS FOR RELIEF REQUESTED

The bases for Cassell's motion, which are set forth more fully in the Memorandum of Legal Authority below, are as follows:

1)      The subpoena subjects Cassell to undue burden.

2)      The information sought in the subpoena is not reasonably calculated to lead to the discovery of admissible evidence.

3)      Maxwell has the ability to obtain the information sought in the subpoena directly from other persons, including (for example) a person with whom she has a joint defense agreement.

4)      Maxwell has failed her duty, imposed by Federal Rule of Civil Procedure 45(c)(1), to avoid imposing undue burden or expense on Cassell.

5)      Maxwell seeks privileged information about Cassell's confidential attorney-client and work-product protected communications.

6)      Maxwell has not provided the required notice of subpoena for nonparty under DUCivR 45-1.

## CERTIFICATION

In accordance with DUCivR 37-1, undersigned counsel for Cassell hereby certifies that it has in good faith conferred with counsel for Maxwell in an effort to resolve this

discovery dispute.  Specifically, counsel for Cassell has sent several emails back and forth to counsel for Maxell, explaining why the subpoena is unduly burdensome and other grounds for the subpoena to be withdrawn.  Maxwell's counsel has declined to withdraw the subpoena.[2]

### STATEMENT OF FACTS SUPPORTING REQUEST FOR RELIEF

1.    Cassell is a Utah attorney who maintains his office in Salt Lake City, Utah.

2.    Cassell is a counsel of record for plaintiff Virginia L. Giuffre in the case *Giuffre v. Maxwell*, No. 15-cv-07433-RWS (S.D.N.Y.).  Other counsel of record include: Sigrid S. McCawley and Meredith Schulz of Boies, Schiller & Flexner, LLP (Ft. Lauderdale, Florida), and Bradley J. Edwards of Farmer, Jaffe Weissing, Edwards, Fistos & Lehrman (Ft. Lauderdale, Florida).

3.    In *Giuffre v. Maxwell*, Ms. Giuffre alleges that she was defamed by defendant Maxwell when Maxwell called her a "liar" and otherwise challenged the accuracy of Ms. Giuffre's statements that Maxwell was involved in her sexual abuse.  *See* Declaration of Brent Hatch in Support of Cassell's Motion to Quash ("Hatch Decl."), Exhibit 1 (Giuffre v. Maxwell Complaint).

4.    Cassell has received a subpoena to produce numerous documents in the *Giuffre v. Maxwell* case.  Hatch Decl., Ex. 2. Cassell is not a party to that case.

5.    The subpoena requests the production of fourteen different categories of documents (referred to in this motion as RFPs 1 through 14).  Under the subpoena, RFPs #1 and #2 are all documents produced by Cassell or received by Cassell in a case styled

---

[2] More specifically, on May 27, 2016, June 2, 2016, and June 10, 2016, undersigned counsel corresponded by email with Mr. Pagliuca, as well as in related phone calls.  Mr. Pagliuca agreed for an extension of time to respond to the subpoena but not withdraw the subpoena.

*Edwards and Cassell v. Dershowitz*, 15-000072 (17th Judicial District, Broward County, Florida).  The production at issue in that case spanned several thousand pages of documents.  Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 5.  Production *from* Dershowitz came in several different stages, and various productions involved assertions of privilege.  Production *to* Dershowitz of documents and receipt of documents in that case was handled by Cassell's attorney, Jack Scarola, Esq.  *Id.*  While Cassell has many of the documents that were produced or received, he did not comprehensively maintain records of the exact documents produced or received, because Scarola was the lead attorney on the case.  *Id.*

6.     While Defendant Maxwell has subpoenaed Cassell to produce various documents associated with the Dershowitz case, she is in a common interest agreement with Dershowitz.  *See* Hatch Decl., Ex. 4 at 471, 507-31, particularly at 524-28 (excerpts from deposition of Alan Dershowitz during which, on instructions from his attorney Mr. Indyke, Dershowitz refuses to answer deposition questions about Maxwell based on a common interest agreement with her).  When Maxwell was asked to produce documents related to any joint defense agreement entered into between her and Dershowitz, she responded: "Ms. Maxwell objects to this Request to the extent it seeks documents or information protected by the attorney/client privilege, the work-product doctrine, the common interest privilege or any other applicable privilege.  Subject to and without waiver of the foregoing, Defendant has been unable to locate any documents responsive to this Request."  Hatch Decl., Ex. 5 at 8.

7.     RFP #3 in the subpoena seeks discovery from the case *Jane Doe 1 and Jane Doe 2 v. United States*, No. 9:08-cv-80736-MARRA (S.D. Fla.).  Cassell is an attorney in that case, along with co-counsel Bradley J. Edwards.  Edwards and Cassell filed the case in

4

July of 2008 and have been handling the matter ever since on a pro bono basis.  Hatch Decl.

Ex. 3 at ¶ 6.  The case currently has 393 docket entries.

8.      Edwards and Cassell represent Jane Doe 1 and Jane Doe 2 in the action,

brought under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.  This CVRA

action alleges that the Government negotiated a non-prosecution agreement with sex abuser

Jeffrey Epstein, and then concealed the agreement from Epstein's victims, including Jane

Doe 1, Jane Doe 2, and other similarly situated victims.  *See* Hatch Decl., Ex. 6 (complaint in

*Jane Doe 1 v. United States*).  Cassell and Edwards have also filed motion to join on behalf

of Jane Doe 3 (Ms. Giuffre) and Jane Doe 4.

9.      Over the course of the nearly eight years of litigation in the case, the

Government has produced in discovery correspondence between attorneys for Jeffrey Epstein

and itself (i.e., the U.S. Attorney's Office for the Southern District of Florida and other

components of the Justice Department).  That correspondence has been produced in multiple

steps and amounts to hundreds of pages (if not thousands of pages) of material.  *See* Hatch

Decl., Ex. 3 (Cassell Decl.) at ¶ 7.

10.      On February 10, 2016, Edwards and Cassell filed a sixty-page motion for

summary judgment that included 140 exhibits.  DE 361 & 362, No. 9:08-cv-80736-MARRA.

Those exhibits are not under seal.

11.      Apart from correspondence in the public case file, the Discovery produced by

the Government in the *Jane Doe 1 v. United States* case is currently subject to a protective

order.  *Does v. United States*, DE 326 at 4.

5

12.     RFP #4 seeks engagement letters between Cassell and Ms. Giuffre.  Such materials can be, and have been, sought and produced in the *Giuffre v. Maxwell* action. Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 8.

13.     RPFs #5 and #6 seeks joint defense agreements to which Ms. Giuffre is a party.  These documents can be, and have been, sought and produced in the *Giuffre v. Maxwell* action.  Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 9.

14.     RFP #7 seeks documents relating to Cassell's work on behalf of a Florida corporation, Victims Refuse Silence, Inc. (VRS).   Maxwell has already filed a subpoena to VRS for materials that might be relevant to this case.  Hatch Decl., Ex. 4 (VRS subpoena). Moreover, any work Cassell would have done for the corporation would have been as an attorney and would have been protected by the attorney-client privilege.  Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 10.

15.     RFP #8 seeks any disclosures made to Cassell by Victims Refuse Silence, Inc., and "any person associated with Victims Refuse Silence, Inc."  It appears to be undisputed that Ms. Giuffre is a person associated with VRS, and she is also a client of Cassell's.  Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 11.

16.     RFP #9 seeks to have Cassell produce documents "concerning any investigation by any law enforcement agency that refer to Ghislaine Maxwell."  Such documents can be, and have been, sought in the *Giuffre v. Maxwell* action.  Counsel for Ms. Giuffre have asserted privilege over the documents and submitted those documents for in camera review by Judge Sweet. *See* Giuffre v. Maxwell, DE 128 at 1 ("Plaintiff Virginia Giuffre hereby notifies the Defendant of her submission of law enforcement materials to the

Honorable Judge Robert W. Sweet for *in camera* review . . . .").  That review is on-going at this time.

17.     RFP #11 seeks all documents with any "journalist, reporter, producer, author, director, or any employee or agent of the same" which "relate or refer to Virginia Giuffre, Ghislaine Maxwell or Jeffrey Epstein."  Cassell has been working on the CVRA case, which "relates" to Epstein since July 2008.  Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 12.  During that nearly eight year period of time, he has received approximately 200,000 emails and sent approximately 80,000 emails.  *Id.* at ¶ 13.

## MEMORANDUM OF LEGAL AUTHORITY

### THE SUBPOENA SUBJECTS CASSELL TO AN UNDUE BURDEN AND SHOULD BE QUASHED OR A PROTECTIVE ORDER SHOULD BE ENTERED

Defendant Maxwell has served a subpoena on Cassell as an attorney for the party against whom she is litigating.  The subpoena appears to be designed not to secure important information in the case but rather to unduly burden the Cassell with the obligation to respond.  Much, if not all, of the information can be secured from other sources and in other ways.  And most, if not all of the remaining material, is protected by attorney-client or work-product protection.  Accordingly, the subpoena should be quashed or, in the alternative, a protective order should be entered.

### I.  The Legal Standards

Federal Rule of Civil Procedure 45 sets out the procedures for serving and responding to subpoenas.  For a subpoena requiring the production of documents, Rule 45 requires that

"notice and a copy of the subpoena must be served on each party" before service on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).[3]  Rule 45 also requires that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).  The Rule further states that "[t]he issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply."  *Id*.  The Rule also states that, upon a timely motion, "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).

"Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."  *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662-663 (D. Kan. 2003).  *Accord Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).  *See also Dart Industries Co., Inc. v. Westwood Chemical Co.,* 649 F.2d 646 (9th Cir.1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery."); *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."); *Travelers Indemnity Co.*

---

[3] Defendant Maxwell has failed to provide any such notice of service to Giuffre.  Under the local rules, this makes the service of the subpoena on Cassell technically defective.  *See* DuCivR 45-1 (forbidding service of a subpoena on a non-party requiring production of documents until four days after the service of the notice f the subpoena).

*v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) ("An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.")  Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry.  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).  "Whether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *Travelers*, 228 F.R.D. at 113 (internal quotation marks omitted).  "The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court."  *Id*.

In addition, of particular importance here, numerous federal district courts have determined that a subpoena to a non-party seeking the production of documents constitutes an "undue burden" on the subpoena respondent when the issuer of the subpoena can obtain (or already has obtained) the documents or testimony from a party to the action.  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005); *Travelers*, 228 F.R.D. at 113-114; *Jones v. Hirschfeld*, 219 F.R.D. 71, 78 (S.D.N.Y. 2003); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014); *Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Brown v. City of Syracuse,* 648 F.Supp.2d 461, 466 (N.D.N.Y.2009) (when balancing hardships between requesting party and non-party, court should consider whether

there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus Medical, LLC,* 2011 WL 6415540, at *6 (S.D.Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests.").

Moreover, district courts have also ruled that a subpoena to a non-party represents an "undue burden" if the information sought is not relevant pursuant to Federal Rule of Civil Procedure 26(b)(1). *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005); *Jones v. Hirshfeld*, 219 F.R.D. 71 (S.D.N.Y. 2003). "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon*, 232 F.R.D. at 637. "[A] court has discretion to circumscribe discovery even of relevant evidence by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Jones*, 219 F.R.D. at 74 (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## II.    The Court Should Quash the Subpoena to Cassell.

### RFPs #1 and #2 Should be Quashed.

RFPs #1 and #2 ask Cassell to produce documents that were produced by Dershowitz (or to Dershowitz) in the *Edwards and Cassell v. Dershowitz* litigation. The Court will notice immediately that, in seeking Dershowitz documents, defendant Maxwell has not asked Dershowitz to provide them. Her failure to seek these documents directly from Dershowitz is all the more puzzling because she has been working closely with Dershowitz for some time. In particular, during the Dershowitz litigation, an attorney for Dershowitz blocked

discovery into matters known by Dershowitz under a "common interest agreement" in place that extended between Dershowitz, Epstein, and Maxwell.  1. See Hatch Decl., Ex. 4 (excerpts from deposition of Alan Dershowitz).  In light of the fact that Maxwell and Dershowitz have a close working relationship, it is unduly burdensome that Maxwell seeks these items not from her *ally* but from attorneys for her legal adversary.  As in the *Jones* case cited above, it appears that Maxwell's motivation for issuing the subpoena and seeking discovery from Cassell is "merely for the sake" of conducting further discovery that will burden Cassell.  *Jones*, 219 F.R.D. at 78.

In addition, Cassell was a party to the *Edwards and Cassell v. Dershowitz* litigation, and was represented by lead counsel Jack Scarola.  Cassell did not make it point to precisely catalogue each and every document that was being received or produced.  *See* Hatch Decl., Ex. 3 at ¶ 5.  Similarly, Cassell provided materials to his attorney who, in turn, selected which materials were responsive to Dershowitz's discovery request.  *Id.*  In such circumstances, it would be an undue burden to force Cassell to confer with his attorney to reconstruct precisely what materials were produced and received in the litigation.  Dershowitz knows what he produced.  And because he is in a common interest agreement relationship with Maxwell, it will be much easier for him to sort out any concerns about what or was not produced than it would be for Cassell.

RFP #3 Should be Quashed.

The subpoena also asks Cassell produce documents provided in discovery from the case of *Jane Does #1 et al. v. United States* (S.D. Fla.) – i.e., correspondence between

Epstein's defense attorneys and the Government concerning the plea arrangement to be struck between the two.  This request involves a substantial number of documents (Hatch Decl., Ex. 3 at ¶ 6-7) and should be quashed as well.

The discovery materials defendant Maxwell seeks are currently under a protective order barring further dissemination of the materials.  The order was entered by Judge Marra in the underlying case.  *Does v. United States*, DE 326 at 4.  The order allowed Cassell and Edwards to identify relevant document and then file them in public pleadings.  But other documents provided by the Government in discovery remain under a protective order.

On February 10, 2016, Edwards and Cassell filed a sixty-page motion for summary judgment in the case that included 140 exhibits.  DE 361 & 362, No. 9:08-cv-80736-MARRA.  That filing is not sealed and makes the most significant parts of the correspondence between Epstein and the Government available to the public, including Maxwell.  But any other materials remain under Judge Marra's protective order.  Accordingly, before Cassell could even have the option to release the materials that the Government has provided to him as an attorney in the case, defendant Maxwell would have to approach Judge Marra and seek a modification of the protective order.

But the fact that defendant Maxwell is trying to obtain documents from Cassell that are under protective order orchestrated by her former boyfriend (and current "common interest" partner) Epstein only serves to demonstrate why the subpoena to Cassell is harassing.  Defendant Maxwell could have simply asked Epstein to provide the materials (or, alternatively, subpoenaed the materials directly from Epstein).  Epstein's own materials are not under a protective order.  It is only the materials provided to Cassell (and his co-counsel

Edwards) during discovery that are under the protective order.  Epstein and his attorneys have, of course, all the correspondence involving their plea discussions.

In addition, of course, the Government has all of the correspondence.  The materials at issue originated with the Government – which, after Epstein, is the most natural place from which to seek production.

The only apparent reason for seeking these materials from Cassell rather than Epstein (or the Government) is to burden Cassell.  Seeking discovery of Cassell "merely for the sake" of creating a burden clearly constitutes a grounds for quashing the subpoena.  *See Jones*, 219 F.R.D. at 78.  And in considering the burden involved, the Court should consider the fact that Cassell has been working on this matter, as one of only two principal attorneys, on a pro bono basis for nearly eight years.  Hatch Decl., Ex. 3 at ¶¶ 6-7.  Recently, Supreme Court Justice Sonia Sotomayer decried the lack of pro bono legal counsel available to provide legal services to those unable to afford them.  *See, e.g.,* Tony Mauro, *Sotomayor Urges Mandatory Pro Bono for All Lawyers*, The National L.J., May 17, 2016.[4]  A pro bono attorney should not be forced to spend additional time and resources responding to a burdensome discovery requests for the materials that can be more easily collected elsewhere.

<u>RPFs #4, #5, and #6 Should be Quashed.</u>

The fourth, fifth, and sixth RFPs seek engagement letters between the plaintiff in the case (Virginia Giuffre) and Cassell as her attorney, as well as joint defense or common interest agreements relating to Ms. Giuffre.   Defendant Maxwell can seek – and has sought – production of any such documents in the case directly from Ms. Giuffre.  *See* Hatch Decl.,

---

[4] Available at http://www.nationallawjournal.com/id=1202757812765/Sotomayor-Urges-Mandatory-Pro-Bono-for-All-Lawyers

Ex. 3 at ¶¶ 8-9.  There is no basis for a duplicative request to Ms. Giuffre's attorney, a non-party to the action.

Moreover, it is somewhat remarkable that defendant Maxwell believes she is entitled to receive any joint defense agreement involving Cassell.  When asked to produce her joint defense agreement with Epstein, she objected that she did not have to produce such agreement because she claimed it was privileged.  *See* Hatch Decl., Ex. 5 at 7 (responses to requests 6 and 7).

Numerous district courts have granted motions to quash subpoenas that seek documents or information from a non-party when the information is available from a party. In *Moon*, the court found that the document requests in the plaintiffs' subpoena to a non-party "all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the nonparty]."  *Moon*, 232 F.R.D. at 638.  The same can be said here, on these RFPs should be quashed.

RFPs #7 and #8 Should be Quashed.

The seventh and eighth document requests seek documents concerning Cassell's work forming or on behalf of Victims Refuse Silence, Inc. (VRS).  This is an organization on which Ms. Giuffre serves as a board member.   Here again, Defendant Maxwell has served a subpoena on the VRS itself for various records.  *See* Hatch Decl., Ex. 7.  It is hard to understand what relevance any additional documents relating to Cassell could have to the case.

In addition, the requests seek such things as document relating to "[y]our formation of" VRS.  This request would obviously seek work relating to Cassell's actions as a lawyer for his client and thus would be attorney-client protected. See Hatch Decl., Ex. 3, at ¶ 10.

Similarly, the request seeks such things as "disclosures made by You to . . . any person associated with VRS."  Cassell's client, Ms. Giuffre, is plainly a person "associated with VRS," *id.* at ¶ 11, so this request seems to ask for all communications between Cassell and his client, unrestricted as to time and subject.  Clearly, these requests are overbroad and unduly burdensome.

<u>RFP #9 Should be Quashed.</u>

RFP #9 seeks all documents "concerning any investigation by any law enforcement agency that refer to Ghislaine Maxwell."  This issue, too, has been heavily explored in the underlying case in the Southern District of New York.  Part of this request appears to be an effort by defendant Maxwell to ferret out the scope of any *current*, on-going law enforcement investigation into Maxwell's crimes – presumably with an eye to preventing that investigation from being successful.  With regard to these documents about a current investigation, Ms. Giuffre has asserted a public interest privilege from being forced to disclose that information.   Documents related to that request have been submitted to Judge Sweet in camera, and he is currently evaluating whether to order their production.  *See Giuffre v. Maxwell*, DE 128 at 1. If Judge Sweet refuses to order their production, it is hard to see why defendant Maxwell should be able to do an "end run" around that ruling by seeking the same documents from Cassell.  On the other hand, if Judge Sweet turns over documents the documents about Ms. Giuffre's cooperation with the law enforcement investigation to

defendant Maxwell, it is hard to understand why she would need additional documents of the same character from Cassell.

Other parts of this request are clearly overbroad as they seek information about *past* law enforcement investigations. For example, the request seeks materials regarding a law enforcement agency that "refer" to Ghislaine Maxwell. The CVRA action involves not only Jeffrey Epstein, but also his potential "co-conspirators," who all apparently received immunity under the non-prosecution agreement that was challenged in his case. All of the documents in the CVRA case thus, in some sense, refer to defendant Maxwell. And, as explained above, apart from materials that have been publicly filed, the remaining correspondence is under a protective order from Judge Marra. Here again, defendant Maxwell can far more easily obtain these materials from her common interest partner Epstein, since *his* own personal copies of these materials are not under a protective order.

RFP #11 Should be Quashed.

RFP #11 seeks documents relating to "any journalist, reporter, producer, author, director, or any employee or agent of the same" connected to Virginia Giuffre, Ghislaine Maxwell, or Jeffrey Epstein. This request is hopelessly overbroad, since the categories of people included (e.g., any "author" or "journalist" or "agent of the same") do not lend themselves to immediate and narrow identification. The request is also unbounded as to time, and thus sweeps in materials remote from the *Giuffre v. Maxwell* case. For example, Cassell began working on a separate pro bono case – *Jane Doe 1 and 2 v. United States* – nearly eight years ago, in July 2008. Hatch Decl., Ex. 3, at ¶¶ 6-7. Defendant Maxwell appears to be seeking media contacts related to that case, since anything in that case clearly

16

"relates" to Jeffrey Epstein and the non-prosecution agreement Epstein was trying to obtain. Hatch Decl., Ex. 3 at ¶ 12.  Since 2008, the CVRA case filed by Cassell and Edwards has attracted broad attention from Congress,[5] legal scholars,[6] as well as the media.[7]   To answer RFP #11, Cassell would have to review approximately 200,000 emails he received during that time and approximately 80,000 emails sent.  *See* Hatch Decl., Ex. 3 (Cassell Decl.) at ¶ 13.  He would then need to determine which of these emails were subject to (for example) work-product protection.  The burden imposed on him would clearly be substantial. Hatch Decl., Ex 3 (Cassell Decl.) at ¶ 14.

The burden imposed on Cassell is an undue burden because defendant Maxwell has far more direct ways to proceed.  Ms. Giuffre, the plaintiff in the underlying action, has been (or could have been) questioned extensively about her interactions with the media, both during her deposition and through discovery propounded to her.   In light that fact, it is not clear how Cassell's communications have any additional relevance to the *Giuffre v. Maxwell* lawsuit.  Ms. Giuffre has sued defendant Maxwell because she (Maxwell) made defamatory statements – not vice versa.  So it is hard to see even how communications Ms. Giuffre may or may not have had with the media would be important to the case, much less how

---

[5]  Responding to the lack of notice given to the victims of the Epstein agreement, Congress recently amended the CVRA to insure that in the future crime victims receive notice of any non-prosecution agreement entered into by the Government.  *See* Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240, 241 (adding 18 U.S.C. § 3771(a)(9) to give crime victims "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement).

[6] *See generally* Paul G. Cassell, Nathanael J. Mitchell & Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act before Criminal Charges are Filed*, 104 J. Crim. L. & Criminology 59 (2014).

[7] Abby Goodnough, *Questions of Preferential Treatment Are Raised in Florida Sex Case*, N.Y. Times, Sept. 3, 2006, at A19; Michele Dargan, *Feds Say They Treated Epstein Victims Fairly*, Palm Beach Daily News (April 8, 2011).

communications her attorney, Cassell, would be relevant.   Under the rules, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense*." Fed. R. Civ. P.  26(b)(1) (emphasis added).  Ms. Maxwell has made no claim against Ms. Giuffre.  And with regard to her defenses, the Court can examine her answer to the complaint to see that none of them relate to any interactions that Cassell may have had with the media.  *Giuffre v. Maxwell*, DE 54 at 8-10 (listing Maxwell's affirmative defenses).

As noted above, federal district courts have quashed subpoenas that seek irrelevant information.  "[C]ourts have incorporated relevance as a [Rule 45] factor when determining motions to quash a subpoena," *Moon*, 232 F.R.D. at 637, and have "discretion to circumscribe discovery even of relevant evidence by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Jones*, 219 F.R.D. at 74.  District courts, such as in *Moon* and *Jones*, have quashed subpoenas that seek to obtain information outside the bounds of relevance to claims or defenses in the case.  The *Moon* court quashed a subpoena that sought irrelevant information through overbroad requests for documents and information.  *Moon*, 232 F.R.D. at 637-638.  In *Moon*, the plaintiff's claims related to an import agreement that covered a three-year period.  *Id*. at 637.  Plaintiff's document requests to the non-party in the subpoena at issue, however, sought documents reaching back over a 10-year period and sought information relating to the non-party's commercial business with other non-parties.  The court weighed "the burden to [the non-party subpoena recipient] against the value of the

information to [the issuer of the subpoena]" and found that "the subpoena imposes an 'undue burden' on the nonparty." *Moon*, 232 F.R.D. at 637.

The *Jones* court made a similar calculation, quashing a subpoena to take the deposition of a non-party upon a finding that the defendant's subpoena to the non-party sought information that "is not relevant to any issue in this case." *Jones*, 219 F.R.D. at 77. In *Jones*, the plaintiff sought enforcement of an agreement with the defendant and the defendant argued that the plaintiff repudiated the agreement, *id.* at 72-74, and issued the subpoena to Mr. Clinton who, the defendant argued, had insisted that the plaintiff repudiate the agreement or had an understanding that she had done so, *id.* at 77.  The court quashed the subpoena, finding that there was no allegation that Mr. Clinton had any non-privileged information regarding whether or not the plaintiff in fact ***did*** repudiate the agreement, which was the relevant issue in the matter.  *Id.*

As in the *Moon* and *Jones* cases, defendant Maxwell has propounded an extraordinarily broad subpoena that imposes a significant burden on Cassell that ultimately seeks information that is not relevant to any claims or defenses in this matter.  The Subpoena should be quashed.

### III.  Cassell Reserves the Right to Raise Other Objections.

For all the reasons just explained, the Court should quash the subpoena issued to Cassell in its entirety under Fed. R. Civ. P 45(c)(3)(A)(iv).[8]  If for any reason the Court finds that some or all of the subpoena survives this motion to quash, Cassell would then

---

[8]  Without waiving any protections that might otherwise exist (including attorney-client privilege or work-product protection), Cassell does not believe that he possesses any documents responsive to RFP #10, #12, and #13.  Cassell does not believe that he possesses any documents responsive to RFP #14, if it is understood to be seeking "original" photographs rather than those that have previously been reprinted.

respectfully request any opportunity to raise such other general and specific objections to the

subpoena as may be appropriate, including attorney-client privilege, work-product

protections, public interest privilege and common-interest privilege.

## **CONCLUSION**

For the forgoing reasons, Cassell respectfully requests that this Court grant the

motion to quash the Subpoena commanding the production of documents by Cassell.  In the

alternative, Cassell requests that this Court enter a protective order barring enforcement of

Maxwell's Subpoena.

DATED this 13th day of June, 2016.

HATCH, JAMES & DODGE

By:   ___/s/ *Brent O. Hatch* __
Brent Hatch (5715)
Phillip J. Russell (10455)
Shaunda McNeill (14468)
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:   (801) 363-6666
Email: bhatch@hjdlaw.com

Paul G. Cassell (6078)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202[9]
Facsimile: (801) 585-2750
Email: cassellp@law.utah.edu

*Attorneys for non-party respondent Paul G. Cassell*

---

[9] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

I certify that on June 13, 2016, I electrically served the foregoing pleading via e-mail on:

Laura A. Menninger
Jeffrey S. Pagliuca
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: (303) 831-7364
Fax: (303) 832-2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*

/s/ *Brent O. Hatch*_____
Brent O. Hatch
HATCH JAMES & DODGE, P.C